# MARKET STREET CABLE RAILWAY COMPANY *v.* ROWLEY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 161. Submitted December 13, 1894. — Decided January 7, 1895.

If, upon the state of the art as shown to exist by prior patents, and upon a comparison of older devices with the patent sued on, in an action for infringement, it appears that the patented claims are not novel, it becomes the duty of the court to so instruct the jury.

The claims in letters patent No. 365,754, issued June 28, 1887, to Benjamin W. Lyon and Reuben Munro for "improvements in automatic top-feed lubricators for railroad car axle-box bearings," must be construed to cover any lubricator composed of an oil cup, an outlet pipe connecting the oil cup with the axle-box containing the axle and bearing, a plug or stopper, which closes the pipe when the vehicle is at rest and opening it when there is a jolting motion, and a gauge adapted to control and limit the movement of the stopper, and to thus regulate the flow of the oil; and, being so construed, the letters patent are void for want of novelty in the invention covered by them.

A mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way by substantially the same means, but with better results, is not such an invention as will sustain a patent.

In the Circuit Court of the United States for the Northern District of California, at the February term, of the year eighteen hundred and ninety-one, B. N. Rowley brought an action at law against the Market Street Cable Railway Company, a corporation under the laws of the State of California, wherein he alleged that on the 28th day of June, 1887, Benjamin W. Lyon and Reuben Munro, as inventors of an improvement in car-axle lubricators, obtained letters patent therefor, bearing said date, and numbered as No. 365,754, and that subsequently,

in 1890, said patentees assigned and transferred to the said plaintiff all their right, title, and interest in and to the invention and the letters patent, in and within the State of California, together with all past accrued claims and demands thereunder in said State; that the defendant company had, since the issuance of such letters patent, without the consent of the plaintiff or that of his assignors, wrongfully and unlawfully made and used, and were continuing to make and use. car lubricators containing and embracing said invention.

The defendant appeared in said action and pleaded the general issue, and a further plea that said Lyon and Munro were not the inventors of the device described in the letters patent, nor was the said invention their joint invention, and likewise a further plea that the defendant procured at all times a license from the said patentees, authorizing their use of said patented device, and likewise a further plea that many of the car-axle lubricators complained of as infringing devices were put upon the cars of the defendant company, and used with the knowledge and consent of said Lyon and Munro prior to their application for the said letters patent, and that thereby the said defendant became possessed of the right to use said car-axle lubricators so put and used upon its cars prior to said application during the life of said patent.

The bill of exceptions discloses that the plaintiff put in evidence letters patent of the United States, No. 365,754, issued on June 28, 1887, to Benjamin W. Lyon and Reuben Munro, and a written assignment thereof, and of rights of action thereunder to the plaintiff by Lyon and Munro dated November 26, 1890. The plaintiff put in evidence a model representing the device sued on, and called witnesses to show the use by the defendant on its lines of the said lubricator, and evidence bearing upon the measure of damages.

The bill of exceptions further shows that it was admitted and understood by the parties on both sides that the cable cars used by the defendant are constructed differently from other street and railroad cars in this: The cars, instead of having an axle extending across near each end with its journal bearing in boxes, as ordinary horse and street cars are

carried, are supported and carried on two swivel trucks, one near each end of the car, similar to a railway car. The wheels which support these trucks are quite small in diameter, in order to bring the body or floor of the car as near the ground as possible; that the defendant was the first to construct and run cars built in that way, and that all the cable cars used by the defendant are built in this way. It was also understood that the only method of oiling the journals of defendant's cars in use before the invention of Lyon and Munro was to make a chamber in the box around the journal and fill it with cotton or other waste. The oil was then poured into this chamber and allowed to run down through a hole which connected the chamber with the journal bearing, and be delivered upon the journal. That method caused much trouble and annoyance, because the oil would often run out before the trip of the car was completed, and the car would finish its trip with a hot journal, and would have to run into the engine-house to have its journals cooled off. It was also admitted that the defendant controls and operates five distinct lines of cable cars in its system, viz., the Valencia Street line, the McAllister Street line, the Haight Street line, the Hayes Valley line, and the Castro Street line, each one being a distinct line, but each running on Market Street a portion of its length, and branching therefrom at different points; that the patentees, Lyon and Munro, placed their oil cups on the cars of the Hayes Valley line before the patent was applied for; also that the specific oil cups placed upon the Hayes Valley line of defendant's cars by the patentees before their application for a patent had wooden bottoms, and that after being in use for a few months the wooden bottoms were swelled by the absorption of oil and burst. The bill of exceptions further discloses that the plaintiff called Lyon and Munro, by whose testimony it appeared that they were in the employ of the defendant company at the time they made their invention and still were; that the materials used, which were of small value, belonged to the company; that the cups put on the Hayes Valley line were experimental, and at the time of the trial were no longer in use, having burst by reason of having wooden bottoms; that

the defendant was using the patented device on its various lines with the knowledge of the patentees; that the patentees had never demanded or received from the defendant company any compensation for the use of the patented device, either directly or by way of increase in salary or additional privileges.

The bill of exceptions further discloses that the defendant put in evidence Patent Office copies of several letters patent for oil cups and lubricators prior in date to those granted to Lyon and Munro.

After the testimony was closed the counsel for defendant made a motion that the court direct the jury to return a verdict for the defendant on the ground that the patent sued on was void for want of novelty. This motion was, after argument, overruled; and the defendant's counsel took an exception which the court allowed.

The defendant's counsel then requested the court to charge the jury as follows: "If you believe from the evidence that Benjamin W. Lyon and Reuben Munro were at the time they made this invention in the employ of the defendant, and that they constructed or acquiesced in the construction of the car-axle lubricators used by the defendant while in its employ, in its time and at its expense, and that they put them or allowed them to be put upon defendant's cars and allowed them to be used, no compensation being made or demanded, then these facts fully justify the presumption of, and of themselves constitute, an implied license to the defendant to use and to continue to use said car-axle lubricators, and you will return a verdict for the defendant." This request the court refused.

And the defendant's counsel took an exception, before the jury retired, to the court's refusal to give the instruction as requested.

The jury found a verdict in favor of the plaintiff in the sum of one hundred dollars, and on March 13, 1891, judgment was entered for that sum and costs. To which judgment a writ of error was sued out.

*Mr. Harvey S. Brown* and *Mr. William F. Booth* for plaintiff in error.

*Mr. John H. Miller* and *Mr. John L. Boone* for defendant in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

Did the court below err in refusing to instruct the jury to find a verdict for the defendant on the ground that the patent sued on was void for want of novelty?

The defendant put in evidence a number of patents prior in date to the plaintiff's, and asked the court to compare the inventions and devices therein described with those claimed by the plaintiff. No extrinsic evidence was given or needed to explain terms of art, or to apply the descriptions to the subject-matter, so that the court was able, from mere comparison, to say what was the invention described in each, and to affirm from such mere comparison whether the inventions were or were not the same. The question was, then, one of pure construction and not of evidence, and consequently was matter of law for the court, without any auxiliary fact to be passed upon by the jury.

If, upon the state of the art as shown to exist by the prior patents, and upon a comparison of the older devices with those described in the patent in suit, it should appear that the patented claims are not novel, it becomes the duty of the court to so instruct the jury. *Powder Co.* v. *Powder Works,* 98 U. S. 126 ; *Heald* v. *Rice,* 104 U. S. 737, 749 ; *Fond du Lac County* v. *May,* 137 U. S. 395.

Looking, first, to the patent sued on, we find that its object is stated to be "to prevent the oil from dripping on the axle when the car stands still, and to feed the oil to the axle and bearing whenever the car moves and jolts." The essential parts are a cup holding the oil, a pipe with exterior thread-screws at each end, a stopper or plug, and a gauge. The arrangement is as follows: The upper end of the pipe is screwed into a disk which forms the bottom of the oil cup. The lower end of the pipe is screwed into the car-axle box or bearing. Seated in the upper end of the pipe is the plug or

stopper, and the gauge is placed within the oil cup, with one end fastened to a side of the cup, and the other extending to and pressing on the head of the plug. In operation, the oil cup is filled with oil, and when the car is standing still the gauge, pressing on top of the plug, keeps the plug in close contact with the pipe, and thus prevents the oil from passing out of the cup into the pipe. When the car jolts, from being in motion, then the plug or stopper likewise jolts and rises, whereby an opening is made between the head of the · plug and the upper end of the pipe, through which opening or crevice the oil passes out of the cup into the pipe, and runs down the pipe into the axle box, and thus lubricates the axle and the bearing.

There is a single claim in the following terms: " In a car-axle lubricator, the combination, with the axle bearing of the oil cup, connected thereto by means of the screw-threaded pipe, stopper or plug, located in the channel of said pipe, and gauge, limiting the upward movement of the said stopper or plug, substantially as set forth." In the specification the patentees disclaim any particular shape or form of the cup, plug, or gauge, saying, " We prefer to make the stopper of the shape as shown in the drawing, but we do not confine ourselves to that shape or form, as any other suitable shape may effect the same result. We do not confine ourselves to the shape or form of the gauge, as shown in the drawing, as any other suitable device by which the gauging of the rise for the plug or stopper is effected will answer our purpose. We do not confine ourselves to the shape of the oil cup, as described, as any other oil cup may be changed readily to admit of the use and application of our stopper and gauge."

It thus appears that the claim of this patent must be construed to cover any lubricator composed of an oil cup, an outlet pipe connecting the oil cup with the axle-box containing the axle and bearing, a plug or stopper, which closes the pipe when the vehicle is at rest and opening it when there is a jolting motion, and a gauge adapted to control and limit the movement of the stopper, and to thus regulate the flow of the oil.

These separate devices and the combination described are found in letters patent of the United States of a date prior to the invention of Lyon and Munro, and for a similar purpose.

We do not deem it necessary to analyze in detail all the prior patents put in evidence by the defendant, but shall describe two or three.

A patent to C. J. Pinkney, No. 267,584, dated November 14, 1882, whose object was to lubricate the slides of locomotive engines, exhibits a combination of an oil cup, a screw pipe connecting the oil cup with the part sought to be lubricated, a stopper in the shape of a ball, the object of which is stated to be to serve as cut-off to the opening and prevent the passage of oil while the cup is at rest. The operation is thus described in the specification : " By the jarring of the ball, which is caused by the movements of the machinery to which the cup may be attached, the opening is sufficiently uncovered to allow of the escape of small quantities of oil sufficient for lubricating purposes. . . . This oil cup is especially designed for lubricating the slides of locomotive engines, the jarring of the ball by the movements of the locomotive being quite sufficient to allow the cup to discharge the required quantity of oil without waste. It is an economical oiler, for when the machinery is at rest there is no discharge of oil."

This patent discloses the same purpose and all the mechanical features of the claim in suit, except the gauge.

In a patent to G. C. Herrick, No. 247,057, dated September 13, 1881, we find described an oil cup, connected with the part to be lubricated by a pipe with thread screws, a stem or plug on which is a piston which acts as a valve or stopper to control the oil passage, and the operation is thus described in the specification : " The cup being applied to the bearing by inserting the threaded portion of the pipe in a socket provided for it, the piston or puppet-valve rises and falls by the motion and vibration of the machinery, and thus allows the oil to flow intermittently from the cup around the piston and stem and down through the bore of the plug to the bearing."

Here are all the elements of the patent in suit, except the gauge, and the specification shows that the function of the

gauge is performed by the arrangement which prevents the piston from rising further than the wall or end above it. Letters patent to J. E. Worswick, No. 297,483, dated April 22, 1884, describe the device as consisting of an oil cup, a screw pipe, a pin or plug; and it is stated that the movement of the plug is controlled by an overlying shoulder or projection.

In the patent to S. Chamley, No. 80,833, dated July 28, 1868, are to be found all the parts of the plaintiff's machine, used for a similar purpose.

There is an oil cup connected with the bearing to be lubricated by a screw pipe. In the pipe or passage is a valve or stopper. In the upper part of the passage is a screw which lies just above the plug or stopper, and its function is described in the specification as follows: "The regulating screw works through the top of the cage or passage, and controls the movement of the valve. By turning this screw up or down the valve will be allowed to rise more or less, and consequently feed the oil faster or slower;" and the specification states: "This invention consists in so arranging a valve in an oil cup that it can be raised by the motion of the part to which the cup is attached, and closed by its own gravity, so that the discharge of the oil will depend on the rapidity of the motion up and down."

The patent to R. A. Fischer, No. 293,237, dated February 12, 1884, shows similar devices—an oil cup, with a screw pipe to attach it to the part to be lubricated, a ball stopper in the oil passage, and an adjustable screw stem, controlling the movements of the ball or stopper. The function of the screw stem is stated to be to limit the upward movement of the valve when the machinery is in motion, and that it can be so adjusted as to shut down over the ball valve and limit its movement.

The last patent we shall refer to is that granted to F. Humphrey, July 27, 1886, and numbered 346,205. Here again are found an oil cup, a screw pipe, a plug, and an overlying adjustable screw gauge. The specification is as follows: "In operation the oil cup is moved with greater or less rapid-

ity, according to the movement of the part to which it is applied, and this movement imparts momentum to the valve, sufficient to cause the valve to be lifted from its seat, once at least at each revolution of the crank. This movement of the valve allows a small quantity of lubricant to escape through the passage pipe to the crank pin or part to be lubricated. The extent of the lift of the valve is limited by the extension of the plug, the under surface of which acts as a stop in limiting or controlling the upward movement of the valve. If the cup is moving comparatively slowly no stop is required, as the momentum communicated to the valve is not sufficient to throw it far enough from its seat to make one necessary. If, however, the movement of the cup is rapid, then it is desirable to locate the stop in relation to the valve to limit the extent of its throw produced by the momentum; and it will be observed that this stop is made vertically adjustable in relation to the valve. The cup acts to deliver lubricant only while in motion, and at all other times the valve is held to its seat by gravity; and the cup can, of course, be used on any movable bearing or part which will communicate motion to the loose valve, and cause the operation of the cup."

It is impossible to read these several patents without perceiving that the patent in suit has been clearly and repeatedly anticipated in its parts, function, and purpose.

The descriptions and drawings disclose some differences in the shape of the several parts, but the plaintiffs declare in their patent, in respect to the cup, the stopper, and the gauge, that they do not confine themselves to the shape or form described in their drawings, " as any other suitable shape may effect the same result."

The case is obviously within the principle, so often declared, that a mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent. *Roberts* v. *Ryer*, 91 U. S. 150; *Belden Manufacturing Co.* v. *Challenge Corn Planter Co.*, 152 U. S. 100.

There is no room to contend that there was invention in

devising oil feeders for cars of a peculiar construction, like those used by the Market Street Cable Railway Company. The patent in question does not claim to be intended to cover an application to cars of any special form or structure; and the devices of several of the anticipating patents could be readily applied to the defendant's cars.

In view, then, of the state of the art as manifested by several prior patents, we think it is plain that the patent of Lyon and Munro is void for want of patentable novelty, and that the court below erred in not so instructing the jury.

This conclusion renders it unnecessary for us to consider the question whether there was error in the court's instruction on the question of an implied license.

*The judgment is reversed and the case is remanded to the Circuit Court, with a direction to set aside the verdict and grant a new trial.*


Mr. Justice Brown dissenting.


In the case of *Battin* v. *Taggert,* 17 How. 74, it was held by this court that it was for the jury to judge of the novelty of an invention, and of the identity of the machine used by the defendant, with that of the plaintiffs, and whether they were constructed and acted upon the same principle. And in *Bischoff* v. *Wethered,* 9 Wall. 812, it was also held that in a suit at law involving a question of priority of invention, where the patent under consideration was attempted to be invalidated by a prior patent, counsel could not require the court to compare the two specifications and to instruct the jury, as matter of law, whether the inventions described therein were or were not identical. Indeed, I understand it to be a general rule, applicable to all trials by jury, that if there be any conflict of testimony with regard to a particular fact, or if, the facts being admitted, men in the exercise of reasonable judgment may derive different inferences from such facts, the question is for the jury. Comparing the patent in suit with the various prior patents claimed to anticipate it, it seems to me that the ques-

tion of novelty is by no means so clear as to authorize the court to take the case from the jury, and that the court did not err in submitting it to them.