CRAMER v. SINGER MFG. CO.*

(Circuit Court of Appeals, Ninth Circuit. August 13, 1906.)

No. 1,184.

1. WRIT OF ERROR—REVERSAL—COMPLIANCE WITH MANDATE.

The Supreme Court having *held* in an action at law for the infringement of a patent by the device of another patent, that from a comparison of the two patents alone, without the aid of extrinsic evidence, it appeared that there was no infringement, and remanded the case to the Circuit Court for a new trial, that court was required on such trial to direct a verdict for defendant regardless of any new evidence.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, § 4651.]

2. PATENTS—INFRINGEMENT—SEWING MACHINE TREADLE.

The Cramer patent No. 271,426 for a sewing machine treadle is not infringed by the device of the Diehl patent No. 306,469.

In Error to the Circuit Court of the United States for the Northern District of California.

John H. Miller, for plaintiff in error.

M. A. Wheaton, I. M. Kalloch, and Charles K. Offield, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error brought this action against the defendant in error to recover damages for an alleged infringement of the first claim of Letters Patent No. 271,426, issued to him January 30, 1883, for a new and improved sewing machine treadle. The machines which were manufactured by the defendant in error, and which it was alleged infringed upon the Cramer patent,

*Rehearing denied October 29, 1906.

were made under Letters Patent No. 306,469, issued October 14, 1884, to Philip Diehl, for "sewing machine stand and treadle." Claim 1 of the Cramer patent reads as follows:

"The vertical double brace joining the legs of the two ends of a sewing machine, provided with holes through its lower extremities to serve as bearings, in combination with a treadle provided with trunnions fitted to oscillate in said bearings, substantially as specified."

The specification described the treadle as provided with two trunnions cast as a solid portion thereof, and extending from its sides into loopholes in the vertical double brace, the trunnions being sharpened to an edge or corner along their lower sides, and the lower end of the loopholes being hollowed to an angle more obtuse than the edge of the trunnion, to serve as bearings for the same and to permit the rocking motion common to treadles. The inventor proceeded to say:

"I am aware that sewing machine treadles have before been provided with V-shaped bearings, and I do not claim the same as my invention." Singer Mfg. Co. v. Cramer, 109 Fed. 653, 48 C. C. A. 588.

The trial of the action in the Circuit Court having resulted in a verdict for the plaintiff thereto in the sum of $12,456, and the case being brought here upon writ of error, that judgment was affirmed in the opinion reported in the volume cited, in which we held, among other things, that whether or not the Diehl device infringed the first claim of the Cramer patent was a question of fact for the jury upon the evidence in the case, and not a question of law for the court.

Subsequently, the case was taken to the Supreme Court by writ of certiorari, where the judgment of this court, as well as that of the Circuit Court were reversed, and the cause remanded to the Circuit Court, with directions to grant a new trial, and for further proceedings not inconsistent with the opinion of the Supreme Court. That new trial was had, and upon the conclusion of all of the evidence, the defendant to the suit moved the court for a peremptory instruction to the jury to return a verdict in its favor, which motion was granted, and a judgment for the defendant was duly entered.

The case is again brought here by writ of error, this time by the plaintiff below, upon the contention that the evidence given upon the last trial shows the facts of the case to be in some respects different from those shown when the case was passed upon by the Supreme Court. It is contended by counsel for the plaintiff in error that while it is true that it was old in the art to use diagonal vertical braces for the purpose of keeping the legs of the machine apart, it did not appear, when the case was before the Supreme Court, that, prior to Cramer's invention, there was no such brace which, while performing that office, also performed the duty of supporting the treadle, which latter fact, it is claimed by the plaintiff in error, was made to appear by the evidence given on the last trial. His counsel also say that in the evidence given on the former trial, it appeared as an unquestioned fact that oscillating shafts, having both bearings mounted in a single casting, were found in the prior art, to wit, in saw arbors, lathes,

and engines, whereas it is claimed by him that the evidence in the present record shows without conflict that neither saw arbors, nor lathes, nor high-speed engines ever contained or used oscillating shafts, or any other kind of a shaft but a revolving one. And it is strenuously insisted by the learned counsel for the plaintiff in error that the finding by the Supreme Court in the prior art of oscillating shafts having their two bearings mounted in a single casting, was essential to the sustaining of its decision that the Cramer invention was not of a pioneer character. We do not so read the decision. In considering the character of the invention, the Supreme Court said:

"To ascertain whether the patented invention of Cramer is entitled to be embraced within the term 'pioneer' as just defined, we will consider it in connection with the state of the art.

"In the history of the art it is unquestioned that long prior to the application by Cramer for the grant of the patent in question, devices similar to the vertical cross-brace C and the lower crossbar or tie-rod D, shown in the drawing of the Cramer patent, were commonly employed in sewing machines. This is conceded by Cramer in statements made in the progress of his application through the Patent Office. Thus, in the specification which forms a part of the patent the vertical brace C is referred to (italics not in original) as 'the *common* cast iron brace C,' and 'the *usual* cast iron double brace'; while in the first of the proposed specifications as well as in that which was finally adopted, the lower bar or tie-rod D is referred to (italics not in original) as 'the *common* cross-brace or crossbar.' And in both the first and second specifications the usual purpose subserved in sewing machines by this crossbar was 'to keep them (the machines) from spreading apart.' It is, of course, obvious that such was also the purpose of the employment of the vertical double or cross-brace.

"The vertical double cross-brace C, as shown in the Cramer drawing, is a solid piece of casting. But it is also an undisputed fact that long prior to the alleged invention of Cramer it was a well-known method of construction when revolving or oscillating shafts were to be placed in bearings, or supports, to have both bearings, or supports, of such shafts attached to a solid metal casting. Instances of such practices, testified to by witnesses, may be referred to. One was a device to hold a saw mandrel or saw arbor, the former being cast in one piece for the purpose of connecting both journals of the arbor to keep it in absolute line. Another device is the headstock of an ordinary engine lathe or machine lathe, where in order to have a proper working machine it is absolutely necessary that the shaft bearings shall be in exact alignment with each other and firmly in one place. Still another illustrative device employed for a great many years is embodied in a high-speed engine. So, also, in the sewing machine art, as evidenced by the Willcox patent No. 106,242 of date August 9, 1870, to be hereafter noticed, the legs of sewing machines had, long before Cramer's application been used as bearings for treadle bars, the bearings being cored out of the leg castings.

"A vertical cross-brace and a lower cross-brace or tie-rod being common adjuncts of sewing machines at the time of Cramer's alleged invention, and it being also customary to support the lower cross-rod or brace in the web of the legs of sewing machines, and to utilize the legs as bearings, and it being old in machinery to employ solid castings as bearings or supports for oscillating shafts where a fixed alignment was essential, we readily conclude that there was no merit in the mere conception or idea that a vertical double brace was capable of being advantageously utilized as bearings for sewing machine treadles, and that the devising of means for so utilizing such a brace did not involve such an exercise of the inventive faculty as entitled Cramer to assert in himself a right to claim a patent broadly for the use in combination of a vertical double brace and a sewing machine treadle. In view of this and of the fact that the principal elements of

the Cramer combination were old, we hold that the Cramer patent was not a primary one, and that it is not, therefore, entitled to receive the broad construction which has been claimed for it."

We think it clear that the reference thus made by the court to the extrinsic evidence was merely in aid of the conclusion it reached in view of the written instruments, which was, of itself, conclusive of the question, and, of course, binding on the court below and on us. Indeed, this is plainly shown in the express language of the court itself, in the beginning of its opinion, where it said:

"As in each of the patents in question it is apparent from the face of the instrument that extrinsic evidence is not needed to explain terms of art therein, or to apply the descriptions to the subject-matter, and as we are able from mere comparison to comprehend what are the inventions described in each patent, and from such comparison to determine whether or not the Diehl device is an infringement upon that of Cramer, the question of infringement or no infringement is one of law, and susceptible of determination on this writ of error. Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Market Street Cable Ry. Co. v. Rowely, 155 U. S. 621, 625, 15 Sup. Ct. 224, 39 L. Ed. 284."

The Supreme Court having thus held, upon a consideration of the written instruments themselves, that the Cramer invention was not of a pioneer character, and that the alleged infringing device is essentially different in construction from that of Cramer, there was nothing left for the court below to do on the last trial of the case but to follow the decision of the Supreme Court, and instruct the jury as it did to render a verdict for the defendant, nor for this court to do but to affirm that judgment.

The judgment is affirmed.