## KESSLER v. BUICK MOTOR CO.

### No. 6805.

Circuit Court of Appeals, Fifth Circuit.

April 5, 1933.

Rehearing Denied May 2, 1933.

J. Carlisle Stuckey, Cody Fowler, and R. C. Brown, all of Tampa, Fla., and Charles Rogers Fenwick, of Washington, D. C., for appellant.

A. G. Turner, of Tampa, Fla., and Edward N. Pagelsen, of Panama City, Fla., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal in a patent suit from a decree on final hearing dismissing a bill to enjoin infringement and for an accounting.

Letters patent, 1,336,237, were issued April 6, 1920, on an application of Benjamin H. Kessler, appellant, filed April 18, 1918, for improvements in the valve attachments of internal combustion engines. The specifications set forth that the principal object of the invention is to eliminate lateral or side play of rocker arms and reduce noise of operation. The drawings which purport to set forth the preferred embodiment of the alleged invention disclose a single line of hooked coil springs so holding one end of each rocker arm as to prevent it from moving laterally, but fail to disclose springs or other means of preventing lateral movements of the other ends of the rocker arms. It was alleged that appellee infringed the first two claims which read as follows:

"1. In combination with the rocker arms of an internal combustion engine, means for yieldably inter-connecting the same to prevent lateral or side movement thereof.

"2. In combination with the rocker arms of an internal combustion engine, of resilient means disposed transversely of the same and engaged therewith for preventing lateral or side movement of the same but permitting free vertical movement thereof."

The suit was defended on the grounds (1) that the claims relied on are so indefinite and general that they fail to furnish information to the public of the limits of the monopoly asserted; (2) that the patent is invalid because of appellant's failure to explain the best mode contemplated by him in applying the principle of his alleged invention; and (3) that the alleged invention had been anticipated by the prior art and disclosed in prior publications.

The claims here involved cover all types of internal combustion engines. Appellee uses what is known as the valve-in-head type of automobile engine. In that type rocker arms are provided to transmit the action of the push rods to the valves. These rocker arms are mounted on a shaft with one end of each resting on a push rod and the other on a valve stem. There are two valves to each cylinder, one called the intake valve and the other the exhaust valve. Appellant testified that he made discovery of his invention in 1916. He admitted that a single line of springs con-

necting the rocker arms with all the cylinders and holding one end only in position, as described in the specifications, did not work satisfactorily, and that before applying for a patent he substituted and practiced the method of so placing springs as to hold in position both ends of the rocker arms of each cylinder separately. Long before 1916 coil springs had been used on the shafts between rocker arms. The purpose of their use was the principal question in dispute. There was testimony for appellant that the purpose was only to utilize the springs as spacers, and that before his invention they had never been used with the idea of making them strong enough to hold the rocker arms securely in position. On the other hand witnesses for appellee testified that beginning at least as early as 1914, and continuously thereafter, coil springs had been used not only as spacers but to accomplish the very purpose claimed by appellant, by the Mason Motor Company, by the Willys-Overland Company, by the Sterling Company, and by the Teetor-Hartley Company. They produced parts of motors to substantiate their testimony. Part of a motor used by the Sterling Company prior to appellant's alleged improvement, introduced as an exhibit, had on it springs which held the rocker arms tightly up against the abutments on the shaft. Appellant admits that this exhibit clearly shows complete anticipation, but he takes the position that strong springs had been substituted for weak ones at some date subsequent to the development of his idea. However, his only proof in support of this theory was that appellee had other motors of the same kind and age which it refused to offer as exhibits. The manufacturers of the Teetor-Hartley motor produced a drawing whose genuineness is not attacked, but which appellant's witnesses undertook to explain away by saying that a drawing could not safely be relied on to show the size or tensile strength of a spring. Printed publications sent out by automobile companies prior to 1916 contained drawings which represented coil springs on the shafts and between the rocker arms, and those drawings were interpreted by expert witnesses for appellee as showing coil springs under compression. An expert witness for appellant admitted that the purpose of those springs was to hold the rocker arms against the abutments so as to prevent the rocker arms from slipping out of proper position, but that in his opinion they were not designed to hold them tightly against the abutments.

The two claims in controversy refer, one to yieldable means, and the other to resilient means, for preventing lateral or side movement. Neither mentions coil springs, and each is so indefinite as to make it doubtful whether one skilled in the art could have ascertained from them just what it was that appellant claimed he had invented. Nor could the principle of the alleged invention be ascertained by a study of the specifications. The method which appellant considered best, and which he actually used, was in material particulars very different from the one he described in the specifications. There is no such disclosure as is required by R. S. § 4888 (35 USCA § 33); Beidler v. United States, 253 U. S. 447, 40 S. Ct. 564, 64 L. Ed. 1006; Permutit Co. v. Graver Corporation, 284 U. S. 52, 52 S. Ct. 53, 76 L. Ed. 163. In view of the prior art it would seem to be incumbent upon appellant to state that his invention had to do with the strength of a spring or other means of holding the rocker arms in proper position. "A claim which is so broad as to include what is old as well as what is new cannot be sustained." 48 C. J. 134, and note citing many cases, among which are State Bank of Chicago v. Hillman's (C. C. A.) 180 F. 732; Burroughs Adding Machine Co. v. Felt & Tarrant Co. (C. C. A.) 243 F. 861; Rosemary Mfg. Co. v. Halifax Cotton Mills Co. (C. C. A.) 257 F. 321; Ridd Milking Machine Co. v. Simplex Milking Machine Co., 2 A. C. 550 (1916).

The district judge held in a written opinion that appellant's alleged invention was anticipated by the prior art and was disclosed also in prior publications. Some of the witnesses testified before him and the testimony fairly supports his conclusion. The exhibit of the Sterling motor was not fairly subject to the suspicion sought to be cast upon it, merely because of appellee's refusal to submit for scrutiny another motor, of the same age and kind, against which with equal reason the charge of substituting a strong for a weak spring could have been made. But aside from everything else, we are of the opinion that the device which appellant adopted and put into practice at best was nothing more than an improvement which did not possess the quality of invention. It seems to us that it would have occurred to any one skilled in the art to substitute a strong spring for a weak one, and in this way limit and restrict the lateral or side movement of the rocker arms. One is not entitled to a patent who merely makes a change of form, proportion or degree, by substantially the same means, even though the change he makes may produce

better results. Burt v. Evory, 133 U. S. 349, 10 S. Ct. 394, 33 L. Ed. 647; Market Street Ry. Co. v. Rowley, 155 U. S. 621, 15 S. Ct. 224, 39 L. Ed. 284.

The decree is affirmed.