## SWENSON v. BOOS.

### No. 13219.

Circuit Court of Appeals, Eighth Circuit.

July 8, 1946.

Andrew E. Carlsen, of Minneapolis, Minn., for appellant.

Charles V. Hildebrecht, of Chicago, Ill. (Edward C. Grelle, of Chicago, Ill., and Frank A. Whiteley, of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and DUNCAN, District Judge.

GARDNER, Circuit Judge.

This was a suit brought by Merrill G. Swenson against Henry P. Boos, doing business as Henry P. Boos Dental Laboratories, for infringement of Swenson Patent No. 2,095,535 and for an accounting. We shall refer to the parties as they were designated in the trial court. Defendant pleaded invalidity and non-infringement and alleged that the invention purported to be covered by the patent and all substantial parts thereof were known to others and used by others in this country before the alleged invention by plaintiff, and were in public use or on sale in this country for more than two years prior to the filing of the application for patent, by various parties, names of whom were set out in the amended answer. The court found that the claims of the patent were anticipated by the Ash tooth and hence the patent was invalid, and dismissed the suit without passing on the question of infringement.

The plaintiff's patent was issued to him on October 12, 1937. It relates to an anterior artificial tooth designed for mounting in a denture and has for an object, among others, to provide a tooth adapted for firm union with the base material of the denture so as to have great resistance to biting strains in all directions. The making of an artificial anterior tooth is said to present problems of retention, strength, occlusion, incising, adaptability, comfort, articulation, appearance and cost of manufacture. A

common type of such a tooth was the so-called pin tooth, given that name because of the use of metal pins, with one end embedded in the tooth portion and the other in the plate or denture base material, about which porcelain was fashioned. The pin type tooth was objectionable because the pins weakened the porcelain causing splitting and breaking, and as light colored, translucent porcelains were developed, the pins showed through, marring the appearance, and the pins encroached on the lingual area, shortening the exposed lingual surface and thereby interfering with the chewing surface. Some other method of retaining the teeth in the denture was sought, and of meeting stress, which is primarily imposed upon the upper teeth by the lower during the incising function. This is said to have been one of the major problems that was sought to be solved in an artificial tooth without pin type retention.

There are two claims in the Swenson patent. Claim No. 1 is as follows:

"An anterior artificial tooth having substantially complete lingual and labial surfaces and a substantially complete base portion having a base wall extending from the labial gingival to the lingual surface, the labial portion being formed with a substantially vertical inner wall extending inwardly from the mesial and the distal sides and the lingual portion being formed with an incisally inclined inner wall extending from the mesial and distal sides and intersecting said inner labial wall, and the mesial and distal side walls of the base portion tapering inwardly toward said incisal portion from said base wall and intersecting said labial and lingual inner walls, thereby forming an inwardly and incisally tapered recess at each side of the tooth, said recesses being suited readily to receive the flow of the base material of the denture during molding, whereby the tooth is firmly interlocked in the denture by a pair of tapered gripping projections composed of the denture base material."

Claim No. 2, so far as any issues here involved are concerned, is substantially similar.

Some of the technical terms used in the Swenson patent and apparently in use in the dental profession may here be defined:

"Lingual," rear or tongue side of the tooth; "Labial," front or lip side of the tooth; "Incisal," cutting edge; "Gingival," top or gum side; "Mesial," side of the tooth toward the center of the mouth; "Distal," side of the tooth away from the center of the mouth.

The tooth of the Swenson patent has a base wall which is referred to as extending from the labial gingival or upper gum end of the labial or front surface of the tooth to the lingual or rear surface. There is a jog between the inner end of the base and the lingual surface. At the top of the lingual surface the tooth is cut away to form a shoulder. Each side of the tooth has a substantially vertical groove which extends away from the base of the tooth until it meets the shoulder at the point where the shoulder unites with a passage or opening extending transversely through the tooth. The grooves converge toward each other as they progress downward toward the incisal edge, and the result of the shape and relative location of the shoulder and grooves is such as to form at each side of the tooth an inwardly and downwardly tapering depression or pit which merges into the transverse passage to form retention points or anchorages for the base material of the denture. The formation of the tooth provides a base surface that is substantially flat, though concave in side view, with undercut surrounding edges that are broken or indented, in plain view, by the upper extremities of the grooves referred to. The undercutting serves to reduce the area of the base portion so as to leave the lingual and labial surfaces extending therebeyond in a horizontal direction. The mesial and distal side walls of the base portion of the tooth taper inwardly from the base wall and intersect the labial and lingual inner walls, thereby forming the reduced conically undercut base or the inwardly and incisally tapered recess at each side of the tooth. The base material, when in the mold, flows into the undercuts, grooves, depressions and transverse passage, so that the base will grip the tooth and hold it in place.

As has already been noted, the findings of the trial court are to the effect that plaintiff's invention was anticipated by

the Ash tooth. Finding No. 11 is as follows:

"Ash teeth, exemplified and illustrated in Defendant's Exhibits 101, 103, 104, 110, 111, 112, 113 and 114, were described in printed publications in this country and in England before Swenson's earliest date of alleged invention of the patent in suit, No. 2,095,535, and were in public use and on sale in this country for more than two years prior to filing date of the application of the patent in suit, No. 2,095,535."

Finding No. 13 is as follows:

"The said Ash teeth have the same principle of retention in the denture as the tooth of the patent in suit, i. e., the teeth are held in place by the denture material solidifying in the recesses in the sides of the teeth."

Finding No. 27 is as follows:

"The Ash teeth relied on by defendant anticipate the claims of Swenson patent No. 2,095,535."

On this appeal plaintiff contends that the Ash tooth did not anticipate his patent.

"Ash's Diatoric Teeth" are described in a circulated advertising catalogue as follows:

"The incisors are firmly held in the rubber by a dovetail wedge, which, to give additional security, is traversed by a hole into which the rubber flows.

"The Bicuspids and Molars are hollowed out from the base towards the crown, to form a chamber out of which two holes run laterally through the approximal walls. During the vulcanizing process the rubber flows into the chamber and through the holes, thus holding the teeth most securely. Additional anchorage is obtained by the vulcanite in the grooves on the lingual surface."

The evidence clearly shows that the Ash tooth possessed the feature making retention of an artificial anterior tooth without pins possible and successful. Each claim of the patent in suit provides for "a substantially complete base portion having a base wall extending from the labial gingival to the lingual surface." Plaintiff contends that the Ash tooth does not have a single base wall extending from the labial gingival to the lingual surface because at the lingual edge in the Ash tooth there is a "hump," so that the wall is not a straight unbroken line, but two lines, making it something like a right angle. The trial court addressing itself to this contention, found,

"16. The said Ash teeth have a substantially complete base portion having a base wall extending from the labial gingival to the lingual surface.

"17. Neither the Ash tooth nor the tooth of the patent in suit has a complete base portion, but the term 'substantially complete base portion' is applicable to both.

"18. In neither the Ash tooth nor the tooth of the patent in suit is the base wall uninterrupted. The interruption is slightly more marked in the Ash tooth but the difference is of degree only and not of kind, and there is no patentable distinction between the two.

"19. In the said Ash teeth the labial portion is formed with a substantially vertical inner wall extending inwardly from the mesial and the distal sides."

"24. The base wall in both the Ash and Swenson teeth at the rear of the labial portion is reduced by approximately one-half. The rest of the base wall toward the lingual surface is circular in the Swenson tooth and rectangular in the Ash tooth. There is no showing that this is a material factor and the language of the claim is broad enough to cover either.

"25. The base portion of the Ash tooth has a hump or jog near the lingual portion, while plaintiff's tooth does not. The degree and size of this hump varied between the different Ash teeth in evidence. On those used by plaintiff for his diagram it is more marked than on the original teeth in evidence on which defendant relies. It is conceded that when any of the teeth are fitted to the individual a certain amount of grinding may be necessary which would tend to decrease this variance between the two types of teeth. Plaintiff testified that the Ash tooth would require much more grinding than his, although he had never worked with Ash teeth. The materiality

341

of this line of testimony is doubtful as it is the claims of the patent which define the invention."

At all times here pertinent Section 31, Title 35 U.S.C.A., provided as follows:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, * * * not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

Referring to this statute in Midland Flour Milling Co. v. Bobbitt, 8 Cir., 70 F.2d 416, 417, we said:

"Prior publications rest upon the same ground as prior patents so far as anticipation is concerned, and no valid patent under the above-quoted statute can be obtained if the invention or device was disclosed in a printed publication, either in this or any foreign country, before the invention or discovery was made."

■■ It appears from the evidence that the use of the Ash tooth was a successful use and not merely experimental. It was widely publicized and sold commercially over a long period of time. Sales seem to have ceased about 1930, but there is no evidence that the manufacture of them has been abandoned. Invention or discovery is not to be considered as an abandoned experiment merely because not applied to commercial use. Midland Flour Milling Co. v. Bobbitt, supra. Here there has been commercial use, and the mere fact that sales have fallen off or stopped entirely can not be said to be evidence of abandonment. In Electrol, Inc. v. Merrell & Co., 8 Cir., 39 F.2d 873, 878, we said:

"Where a device has been brought to the stage of successful operation, it cannot be considered an abandoned experiment simply because its operation is not continued indefinitely."

■ Invention will not be decided on the narrow issue of degree. Freeman v. Altvater, 8 Cir., 129 F.2d 494; General Electric Co. v. Jewell Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81; Fernandez v. Phillips, 9 Cir., 136 F.2d 404; DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 51 S.Ct. 563, 75 L.Ed. 1339; Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136; Market Street Cable R. Co. v. Rowley, 155 U.S. 621, 15 S.Ct. 224, 228, 39 L.Ed. 284. In the last cited case it is said:

"* * * a mere carrying forward of the original thought—a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results—is not such an invention as will sustain a patent."

In General Electric Co. v. Jewell Lamp Co., supra [326 U.S. 242, 66 S.Ct. 84] the Supreme Court, in holding a patent anticipated and hence invalid, among other things said:

"The same result is indicated where, as in the present case, the prior art discloses the method of making an article having the characteristics of the patented product, though all the advantageous properties of the product had not been fully appreciated. Lovell Mfg. Co. v. Cary, 147 U.S. 623, 13 S.Ct. 472, 37 L.Ed. 307. Pipkin found latent qualities in an old discovery and adapted it to a useful end. But that did not advance the frontiers of science in this narrow field so as to satisfy the exacting standards of our patent system. Where there has been use of an article or where the method of its manufacture is known, more than a new advantage of the product must be discovered in order to claim invention. See DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 682, 51 S.Ct. 563, 568, 75 L.Ed. 1339. It is not invention to perceive that the product which others had discovered had qualities they failed to detect."

In the opinion of the trial court filed with the findings, it is disclosed that the court was impressed with the fundamental sim-

ilarity of the Ash tooth and the Swenson tooth. It was the view of the court that the only part of the claim of the patent in suit which presented a debatable issue was that which reads, "a substantially complete base portion having a base wall extending from the labial gingival to the lingual surface." The conclusion from the evidence is stated in the opinion and is reflected in finding No. 25 above quoted.

Even though the hump may be considered as absent in the Swenson patent, its principle of retention as disclosed in the patent was anticipated by the Ash tooth. The degree of the elevation in the so-called hump is emphasized in the arguments, and it is observed that the court found that there is a "jog" or interruption in the lingual gingival in the Swenson patent, and it is urged by defendant that if the plaintiff relies on the presence of a hump in the base wall, as against the absence of such a hump, as a patentable distinction, the claim can not succeed because there is in fact a hump or jog in the base wall of the tooth of the Swenson patent, and that if the hump or jog is less than in the Ash tooth it is a matter of degree and that neither of the two claims in the Swenson patent presents the presence or absence of a hump or jog as a patentable feature. In any event, there is a hump or jog in the base wall of the tooth of the Swenson patent and the fact that it is less pronounced than in the Ash tooth is a matter of degree. The presence of this jog in the base wall of the Swenson tooth is clearly described in the patent itself as follows:

"At the top of the lingual surface, the tooth is cut away to form a shoulder that extends not only across the lingual surface but forwardly toward the central vertical axis of the tooth."

■ The only way in which the base wall of the Swenson tooth can be considered as extending from the labial gingival to the lingual surface as required by the two claims, is by considering the jogged portion as a part or extension of the base wall. Unless so considered the two claims do not read on the drawings of the patent in suit. The conclusion of the trial court

that the "hump" in the Ash tooth was slightly more pronounced than the "jog" in the tooth disclosed in plaintiff's patent, and that the difference was one of degree, is, we think, sustained by the evidence.

■ Section 4888 of the Revised Statutes, 35 U.S.C.A. § 33, requires that the application of the patentee "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." Plaintiff's patent seems to ignore the prior art or to embody it as an invention. Confessedly, much that is included in the claims is found in the prior art, particularly in the Ash tooth, and there is no distinct claim of improvement over the prior art. What is there in this patent that is claimed as a novel feature or an invention or discovery not found in the prior art? The above quoted statute requires the patentee to particularly point out and distinctly claim his invention. United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232; General Electric Co. v. Wabash Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Muncie Gear Works v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

In General Electric Co. v. Wabash Corp., supra, the Supreme Court said [304 U.S. 364, 58 S.Ct. 901]:

"Patents, whether basic or for improvements, must comply accurately and precisely with the statutory requirements as to claims of invention or discovery. The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public."

In United Carbon Co. v. Binney & Smith Co., supra [317 U.S. 228, 63 S.Ct. 170], it is said:

"The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise. * * * Congress has provided that a patent may be awarded only for a new and useful manufacture 'not patented or described in any

printed publication in this or any foreign country, before his invention or discovery thereof.' R.S. § 4886, 35 U.S.C. § 31, 35 U.S.C.A. § 31. While we do not find it necessary to consider questions of novelty and invention, in the view we take of the claims in suit, a mere reading of prior art patents shows how, if they are read with the liberality and inclusiveness claimed for those in suit, they describe products, if not identical, at least of confusing similarity. Whether the vagueness of the claim has its source in the language employed or in the somewhat indeterminate character of the advance claimed to have been made in the art is not material. An invention must be capable of accurate definition, and it must be accurately defined, to be patentable."

The indefiniteness here arises, not so much from the wording of the claims, but from a consideration of the prior art. Apparently the prior art is ignored and the claims do not clearly "distinguish what is claimed from what went before in the art." There is no distinct claim of improvement or novelty, but rather the patent seeks to re-patent what was already old in the art.

The judgment appealed from is therefore affirmed.