272 F.2d 254
 123 U.S.P.Q. 397
 Margaret E. RANKIN, O. B. Distributors, and Cedar Falls
Drapery Co., Inc., Appellants,
v.
Edward S. KING and Joan V. King, individually and as
co-partners d/b/a King Custom Interiors, Doe One,
Doe Two, and American Beauti Pleat,
Inc., Appellees.
 No. 16386.
 United States Court of Appeals Ninth Circuit.
 Nov. 12, 1959.
 
 William Douglas Sellers, Pasadena, Cal., William Van Sciver, Chicago, Ill., for appellants.
 Thomas P. Mahoney, Los Angeles, Cal., for appellees.
 Before BARNES, HAMLEY and JERTBERG, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 This is an appeal from a decision granting appellees' motion for summary judgment, holding the patent in suit invalid and dismissing the complaint. The district court had jurisdiction under 28 U.S.C. 1338, and this Court has jurisdiction on appeal. 28 U.S.C. 1291.
 
 
 2
 Appellants charge eight specifications of error which they state may be reduced to two questions:
 
 
 3
 I. Was there any material issue of fact involved in the motion?
 
 
 4
 II. Can the court disregard affidavits filed for and against the motion and decide the claims of the patent are invalid over prior art as a matter of law without rendering an opinion and without findings of fact?
 
 I.
 
 5
 Siden Patent No. 2,366,986 was issued January 9, 1945 on an application filed November 9, 1942. The original five claims were rejected and newly presented claims six to nine, inclusive, were allowed as claims one to four. The original claimed invention of 'Draperies, Curtains and Similar Hangings in Order to Make Them Hang in as Regular Folds as Possible' was allowed as an improvement under the title: 'Drapery, Curtain and Similar Hanging.'
 
 
 6
 Claims two, three and four[1] were based on a decorative hanging described in claim one.[2] Claim one consisted of a drape supported by a rod, a resilient member of sinuous form secured to the upper edge of the drape, extensible, and in a horizontal plane. Admittedly all except placing the resilient extensible member in a horizontal plane was old in the art. (Ex. H, Certified Copy of File Wrapper.) Claim two added the markings of the points of support on the resilient member for the drape; claim three added openings for and members to support the drape, and claim four added that the unstressed retracted length of the resilient member was substantially less than the width of the extended drape.
 
 
 7
 On other words, the patent discloses a resilient extensible member (such as wire or a spring), sinuous in form, insertible in a hem formed in the upper edge of a drapery with holes at appropriate distances to permit means for support from a rod causing the drapery to fold in the general pattern of the resilient and extensible supporting member.
 
 
 8
 Certain patents were cited in the file wrapper (Ex. H) before the court below, namely:
 
 
 9
 INVENTOR PATENT NUMBER ISSUED
----------- ------------- ------
Schneider No. 1,056,592 1913
Berglund No. 1,746,577 1930
Steinberger No. 2,126,834 1938
Harris No. 2,242,355 1941
 
 
 10
 The prior art cited in the motion for summary judgment, and not cited in the file wrapper, was:
 
 
 11
 EXHIBIT NUMBER INVENTOR PATENT NUMBER ISSUED
-------------- -------------- ----------------- ------
 B Dorn 443,188 1890
 C Shinn & Fagley 359,896 1887
 D J. Shinn 409,760 1889
 E Holtzclaw 661,608 1900
 F Hawley 641,510 1900
 G Kelly 175,544 (British) 1922
 
 
 12
 The Dorn patent (Ex. B) disclosed the use of a spring, to support and guide draperies, extensible and comprehensible along the length of the rod in zig-zag form rather than sinuous. But the Siden patent refers to 'a leaf spring or resilient wire * * * bent * * * in zig-zag or waving line' (p. 1, col. 1, lines 14-17) and 'bent in zig-zag, i.e., in gently undulating bends' (p. 1, col. 1, lines 44-47). Thus the form of the extensible resilient member in Siden was equivalent to the member in Dorn, and anticipated by Dorn.
 
 
 13
 We need nor discuss in detail the remaining prior art. None combine as many points of similarity as Dorn, but each has at least one point wherein Siden was anticipated. The similarity between the Siden patent in suit and the previous Dorn patent was particularly relied upon by the trial judge in coming to his decision.
 
 
 14
 The difference between the two is largely urged by appellants in general language, but specifically it may be summarized as follows:
 
 
 15
 1. The Dorn patent discloses a specific type of traverse heading, with the spring member a part of the traverse; while Siden has the spring for use with a traverse heading.
 
 
 16
 2. The Dorn patent discloses a lock or stop for the extensible resilent member, while the Siden patent depends upon inertia or friction to stop or hold the extensible resilient member.
 
 
 17
 3. The Dorn patent discloses the extensible member attached to the drapery at various points, rather than being placed in the hem thereof with the member supported to the rod at various points.
 
 
 18
 4. The Dorn patent discloses the extensible member in a vertical plane, the Siden a similar member in a horizontal plane.
 
 
 19
 As we see it, the only possible substantial difference between Dorn and Siden is that the resilient member of the former is placed in a vertical plane, and in the latter in a horizontal plane. It seems clear that the extensible resilient member of Dorn could be placed in a drapery hem in the same manner and with the same result as the comparable member in Siden. This was attempted to be demonstrated by appellees in Exhibit J, but the trial court refused to consider Exhibit J on this motion when counsel could not agree as to what it disclosed. (Record, p. 140.) We likewise will not consider it.
 
 
 20
 We agree with the trial court that the Dorn and Siden devices constitute the same means (leaf spring or resilient wire) in the same shape (sinuous or zig-zag) adapted to function in the same way (by uniform expansion and contraction of the resilient member supporting draperies at various points of its length at or near the top of said draperies) to accomplish the same result-- the uniform and eye-pleasing distribution of the hanging folds of a drapery.
 
 
 21
 Further, the language of the Siden patent itself admits the identity of means, function, and result of the Dorn patent with one single exception or modification-- the use of one member in a horizontal plane as opposed to a vertical. This slight difference in means does not, in our opinion, amount to invention.
 
 
 22
 Even if it cannot be said there existed 'strict anticipation' of the patent in suit, and that the turning of the member from one plane to another involves some novelty and is not precisely similar, a trained mechanic surely would, and an inexperienced layman probably would, solve the problem of putting the member on its side without difficulty.[3] We are satisfied the Dorn patent completely anticipates the Siden patent.[4] In Siden there was no new or surprising result, Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and no invention.[5] Under such circumstances, the motion was properly granted. Cf: Market Street Cable Railway Co. v. Rowley, 1895, 155 U.S. 621 at page 625, 15 S.Ct. 224, at page 226, 39 L.Ed. 284; Park-In Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137, 142; Leishman v. Radio Condenser Co., 9 Cir., 1948, 167 F.2d 890, certiorari denied 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429; Stuart Oxygen Co. v. Josephian, 9 Cir., 1947, 162 F.2d 857, 859.
 
 II.
 
 23
 Appellants urge that despite the court's conclusion that Siden was invalid for lack of invention over the prior art, the presence of affidavits disputing the similarity of the devices was sufficient to create an issue of fact.
 
 
 24
 We note first that the court below was careful to specifically limit itself (in granting the summary judgment) to a consideration of Exhibits A to I, inclusive, and L, alone. (Record, p. 83.) He thus excluded Exhibit J, the model showing the Dorn wire in the hem of a drapery in a horizontal position; Exhibit K, the Dorn extensible resilient wire member; and Exhibit M, the Hancock affidavit. As to Exhibit K, and the undisputed part of Exhibit M, he might well have considered them, but did not, nor will we.
 
 
 25
 We note second that the court recognized that the burden of establishing that there was no material disputed issue of fact rested on the moving parties, appellees herein (Record, p. 89). This was proper.
 
 
 26
 The mere presence of affidavits alleging questions of fact existed, or differing in interpretation and reading of the patent and various prior art, whether cited or non-cited, is of no consequence if the court did not consider such disputed facts. Here he specifically declined to consider such affidavits, but considered only the patent in suit, the alleged infringing product, the prior art cited in the file wrapper, and the non-cited prior art. The authenticity of the various patents (Exhibits A to I, inclusive) and of the sole physical Exhibit (Exhibit L) were unquestioned.
 
 
 27
 Thus unless the court needed expert help in reading the patents, it appeared clearly as a matter of law from the undisputed facts disclosed by the letters and the file wrapper of patent No. 2,366,986 and the prior art patents both cited and non-cited, that the patent in suit was invalid because of want of patentable novelty.[6] The motion for summary judgment was therefore properly granted.[7]
 
 
 28
 Appellants ask us to rule, relying on Adams v. Columbus Manufacturing Co., D.C.M.D.Ga.1958, 169 F.Supp. 346, that a summary judgment cannot be granted where affidavits contradictory in nature have been filed. This we cannot do. In Adams, supra, the trial court was asked to consider such affidavits. The court refused. It did not say it could not grant summary judgment, but that 'it must indeed be a rare patent case which can be thus summarily truncated.' The language of that case limits the rule to what the court should 'ordinarily' do. With that qualification we agree. And we will agree that it is 'usually inappropriate' to grant summary judgment in the ordinary patent case. Baker v. First Nat. Stores, D.C.D.Mass.1946, 64, f.Supp. 979, 980.
 
 
 29
 We do not find appellants' cited cases of Bowers v. E. J. Rose Mfg. Co., 9 Cir., 1945, 149 F.2d 612, or Campana Corporation v.Harrison, 7 Cir., 1943, 135 F.2d 334, inconsistent with our position. In both the court did consider and decide between conflicting affidavits, as the latter case recites: '(The pleadings) presented sharp, clear issues of fact. Affidavits were filed to prove and to disprove these issues of fact, and the court on these conflicting affidavits undertook to resolve the conflict.' 135 F.2d at page 336.
 
 
 30
 Here the court below determined, and we agree, it was appropriate to determine the matter on a motion for summary judgment. It was correctly determined, and the judgment is affirmed.
 
 
 
 [1]
 '2. In a decorative hanging as recited in claim 1, wherein said resilient member has means identifying the points at which the plane of symmetry cuts across the sinusoidal form, thereby to indicate points at which said supporting means may be connected to the upper edge of the drape
 
 
 [3]
 In a decorative hanging, the invention as recited in claim 1, wherein said resilient member is provided with openings at points where the plane of symmetry cuts across the member, and said supporting means comprise members extending through said openings and the upper edge of the drape
 '4. In a decorative hanging, the invention as recited in claim 1, wherein said resilient member is a spring strip reversely bent to sinusoidal form, the unstressed retracted length of the bent spring strip being substantially less than the width of the extended drape.'
 
 
 [2]
 '1. In a decorative hanging to be supported from a rod, a drape, a resilient member secured to and along the upper edge of the drape, said member being of sinuous form, in a horizontal plane, and extensible to adjust the effective width of the drape, and means connected to and spaced along the upper edge of the drape, for supporting the drape upon the rod.'
 
 
 [3]
 66 Stat. 798 (1952), 35 U.S.C. 103. The statute provides in part that: 'A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'
 See also: Leishman v. General Motors Corp., 9 Cir., 1951, 191 F.2d 522, 530, certiorari denied 1952, 342 U.S. 943, 72 S.Ct. 556, 96 L.Ed. 702.
 
 
 [4]
 Muench-Kreuzer Candle Co. v. Wilson, 9 Cir., 1957, 246 F.2d 624; Oriental Foods v. Chun King Sales, 9 Cir., 1957, 244 F.2d 909; Kwikset Locks v. Hillgren, 9 Cir., 1954, 210 F.2d 483; Mettler v. Peabody Engineering Corporation, 9 Cir., 1935, 77 F.2d 56, 58; Delco Chemicals v. Cee-Bee Chemical Co., D.C.S.D.Cal., 1957, 157 F.Supp. 583, 590 (reversed on other grounds, 9 Cir., 1958, 263 F.2d 150)
 
 
 [5]
 Dow Chemical Co. v. Halliburton Co., 1945, 324 U.S. 320, 328, 65 S.Ct. 647, 89 L.Ed. 973; Park-In Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137
 
 
 [6]
 United States v. Esnault-Pelterie, 1937, 303 U.S. 26, 30, 58 S.Ct. 412, 82 L.Ed. 625; Heald v. Rice, 1881, 104 U.S. 737, 26 L.Ed. 910. Cf. Hanovia Chemical & Mfg. Co. v. David Buttrick Co., 1 Cir., 1942, 127 F.2d 888
 
 
 [7]
 Vermont Structural Slate Co. v. Tatko Bros. Alate Co., 2 Cir., 1956, 233 F.2d 9, 10. And cf., Rothe v. Ford Motor Co., 1958, 102 U.S.App.D.C. 331, 253 F.2d 353, 355, differentiating Hycon Manufacturing Company v. H. Koch & Sons, 9 Cir., 1955, 219 F.2d 353