**MARTIN v. UNITED AIRCRAFT CORPO-RATION et al.**

**No. 1164.**

District Court, D. Delaware.

April 5, 1940.

Karl Fenning, of Washington, D. C., Norman H. Samuelson (of Hays, Podell & Shulman), of New York City, and Clarence A. Southerland and William S. Potter (of Southerland, Berl, Potter & Leahy), both of Wilmington, Del., for plaintiff.

Drury W. Cooper and C. Blake Townsend (of Cooper, Kerr & Dunham), both of New York City, and Hugh M. Morris, of Wilmington, Del., for defendants.

NIELDS, District Judge.

This is a civil action brought in March, 1936, for alleged infringement of three patents issued to plaintiff. The defenses are (1) invalidity by reason of anticipation and lack of invention, and (2) noninfringement.

Each of the patents has to do with retractable landing gear for aircraft. They are:

No. 1,306,768 granted June 17, 1919 on an application filed June 8, 1916. The patent expired three months after this action was brought. The claims in issue are Nos. 1, 2, 3, 5, 17, 18, and 19.

No. 1,418,008 granted May 30, 1922 on an application filed November 14, 1918. The patent expired shortly after the conclusion of the trial of this action. The claims in issue are Nos. 2, 4, 5, 16, 17, 21, 35, 36, 40, 41, and 42.

No. 1,431,017 granted October 3, 1922 on an application filed March 5, 1921. This patent expired October 3, 1939. The claims in issue are Nos. 16, 17, 18, 19, 21, 24, 29, 30, 32, 34, 35, 37, 41, 43, and 44.

A retractable landing gear is simply a device for pulling up the wheels, pontoons, skids, or the like, of an airplane while it is in flight, and letting them down when the airplane is ready to alight. The purpose of pulling up the wheels may be to lessen air resistance or simply to get them out of the way of the water.

Both amphibian and land planes with retractable landing gear go back to the

earliest days of the airplane art. As stated in plaintiff's brief, "The idea simply of withdrawing or retracting the chassis frame members within the fuselage or body of an airplane was not new with the plaintiff." Plaintiff's contention is that he was the first to perceive that holes, recesses, or slots in the outer skin of an airplane caused as much disturbance to the flow of the layer of air adjacent the skin of the plane, termed the "boundary layer air flow," as was caused by projections outside the skin of the airplane. Martin sought not only to retract the alighting devices close up against the body or wings, as many had done in the prior art, but to so retract them as to disturb the boundary layer air flow as little as possible. In the specifications of the first patent he states: "The construction also provides means for completely housing the device when the machine is in flight, and when extended of closing the housings in such a' manner as to present minimum wind resistance and not disturb the passage of air along the stream line of the fuselage when the recesses are not occupied by the alighting device."

█ The evidence shows no use or recognition by the art of any of the patents in suit. No commercial machine has ever been built thereunder. No one has taken a license under any of the patents. The plaintiff delayed bringing suit until the patents were about to expire. Plaintiff was present in court throughout the trial and did not testify as a witness. His only witness was an expert who had never seen defendants' structures.

The bill, verified by plaintiff, alleges that the patents are of great utility and value to the plaintiff and benefit to the public. That at all times since making the alleged inventions plaintiff has maintained and still maintains a plant, factory and equipment for manufacturing the alleged inventions "to fill the demand therefor", but has been prevented from supplying the demand by the alleged infringement. No attempt was made to adduce any evidence to support these allegations.

Under the above circumstances the claims must be limited to the specific mechanical constructions that the patents actually disclose.

Defendants are all Delaware corporations. United Aircraft Corporation owns all the stock of the other two defendants. It manufactures the Sikorsky airplanes.

The accused machines are four Sikorsky models known as S-38, S-39, S-40 and S-43; and one Boeing model known as 247. Plaintiff relies exclusively upon defendants' answers to plaintiff's interrogatories as showing the accused structures. With the exception of model S-40, all the Sikorsky planes are amphibian, i. e., capable of taking off and alighting on either land or water. Only three machines like model S-40 were ever built, and only the first of these had any landing wheels. After testing the first model, the wheels and landing gear were removed and the machine was used as a seaplane. The other two were built and operated as seaplanes. In short, the three S-40 models were flying boats.

The accused Boeing is a land plane exclusively. Its wheels are simply pulled up while flying and let down for alighting. It was bought by defendants from another manufacturer for the use of the executives of defendants.

As to the first Martin patent, both front wheels and tail wheel of the S-43 are charged to infringe claims 3, 17, 18, and 19. These four claims were all held invalid by the Court of Claims. Martin v. United States, 37 U.S.P.Q. 55, 57.

In Martin's suit against the government on the second patent, the Commissioner of the Court of Claims filed his report and recommended that all of the claims there in suit (1, 3, 5, 8, 9, 10, 15, 16, 17, 21, 35, 37, and 42) be held invalid.

### Plaintiff's Patents.

The *first patent* relates to means for retracting and protracting landing gear for aircraft. More particularly, it discloses a swinging frame, quadrilateral in form, with a single diagonal, and arranged transversely the airplane. The frame is pivoted at its two upper corners and has a wheel at each lower corner. The frame can be swung up rearwardly by hand cranking. When retracted the frame members fit into slots in the bottom of the airplane. The wheels may go wholly outside the airplane body or partly inside. When protracted the slots in the bottom of the airplane are closed by spring-pressed plates, housed wholly within each slot. When retracted the slots receive and are completely filled and closed by the frame members. The frame members are specially shaped and fit into the slots. When protracted the frame must be latched in down position before the airplane can land on it; otherwise it would simply dangle in the air. The airplane

can land only with its wheels fully extended.

This first patent lacks utility. It discloses a frame, quadrilateral in form, which the patent later states is unnecessary. It is inoperative. It describes a construction dangerous to life. If the wheels be retracted while the machine is in the air, it would be practically impossible for the pilot to put them down into position for landing while attending to his other duties. These other duties include operation of the joystick to control the plane both laterally and longitudinally, steering, and management of the throttle.

The *second patent* discloses landing gear consisting of a frame supporting landing wheels in many respects similar to that of the first patent. It makes provision for a wheelbase wider than the body of the airplane whereby the frame may be housed partially in the body of the airplane and partially in the wing structures. The wheels go through holes in the wing where they may be covered by housing on top of the wing. The same form of quadrilateral swinging frame as shown in the first patent is retained but the single diagonal is abandoned and two intersecting diagonals are used. A worm gear of "any well-known form" of the irreversible variety holds the swinging frame in any position to which it is adjusted. The construction is said to be such that the airplane can land when the wheels are "in any projected position". Instead of cranking the frame up by hand, it is cranked up or down by wind power. A pin-wheel and a little wing are the devices shown for that purpose.

The only asserted advance of the second patent over the first is that the wheels are more widely spaced than the width of the airplane body. Instead of going up outside the body, they go part way into holes cut through the lower wing.

The *third patent* discloses retractable pontoons as well as retractable wheels. If the airplane is large requiring a wider tread than in the first or second patents, both the wheels and pontoons with their swinging and supporting frames may be pulled up exclusively into the wings instead of into or outside the body as in the first patent, or partly into the body and partly into the wings as in the second patent. Both pontoons and wheels are arranged to be pulled up or let down upon swinging frames as in the first and second patents. The mechanism for doing this as well as the

pontoons and wheels themselves may be entirely in the wings. The pulling up and letting down may be done either by wind power as in the second patent or by hand cranking as in the first patent. When cranked up, either by wind power or by hand, energy to put the pontoons or wheels down again may be stored in a coiled spring.

### Defendants' Machines.

The S–38 is an amphibian type of airplane. It is a biplane with a main upper wing and a shorter lower wing. A small steadying pontoon to prevent lateral tipping when on the water is fixed on the end of the lower wing. The body of the airplane is boatlike in character. There is no fore and aft swinging of the frame, like that of the Martin patents, in any of the Sikorsky machines. All lift their wheels sidewise and separately at each side of the hull. The retraction is to raise the wheels up out of the way of the water. Each wheel is hinged to the side of the hull by means of a triangular frame. The hydraulic system for swinging the wheels up or down is covered by defendants' patent invented by Sikorsky. None of the patents in suit has anything to do with an hydraulic system. The precise construction used in the S–38 had been extensively used in the prior art for many years before Martin. Defendants' construction is shown to be identical with that of a French patent issued in 1912.

The S–38 does not use the construction disclosed in any of the Martin patents. It does not have the quadrilateral swinging frame of the first patent, nor any transverse frame, nor a single diagonal brace, nor double diagonal braces, nor slots for the frame members to be pulled into, nor spring-pressed closure plates, nor a worm gear to hold the wheels in any position, nor any air motor to crank them up and down, nor movable pontoons, nor inflatable rubber bags over the pontoons, nor sliding doors to cover parts of the wheel frames; nor do the wheels or their frame members go into the body, wings, or any part of the airplane. Both the wheels and their frame members are always out in the air, whether up or down.

The S–39 is also an amphibian airplane. Its construction is substantially that of the S–38. The forward member of the triangular frame is always in tension. It is never called upon to take compression. It is simply an extension of the axle. There is no third swinging member in the

frame because the front and rear members are individually hinged to the side of the hull.

The S–40 is also an amphibian airplane. These machines, of which only three were ever built, were all flying boats without landing wheels, except for one experimental machine tested with wheels. After the test, the wheels were removed. Thereafter all three machines were operated exclusively as flying boats or seaplanes.

The S–43 is likewise an amphibian machine, having wheels at the sides of the hull. They are lifted upwardly and inwardly in a vertical plane, going laterally about half way into a dish-shaped depression in each side of the hull. Because of the offset hinge construction, the linkage would completely collapse if the wheels were not all the way down before the plane attempted to land. On landing, the forward members are always in tension and the rear members are always in compression. The same member does not take both tension and compression.

This machine has a tail wheel which goes up and down into a hole near the rear of the body, but does not go more than about half way in. When pulled up, the wheel rises vertically. It does not close or seal anything, except to the limited extent such wheels had always done in the prior art.

The Boeing 247 is a land plane. It has no hull or pontoons. The pilot lowers the front wheels for landing. He raises them about half-way into open wells or holes in the bottom of the flat portion of the wing during flight. There is no closure of the wheel-holes whether the wheels are in or out. When retracted, the front wheels go part way into the holes and to that extent partially fill them. This is like the prior art. The tail wheel of the Boeing machine does not retract at all. It always sticks out in the air.

When the front wheels are protracted the landing thrust is taken by a strut which is then in vertical position. The airplane was designed to be landed, and is, in fact, landed with the wheels fully protracted. If the wheels were not fully protracted the thrust of any attempted landing would fall on a long, thin screw not designed to take such a strain.

### Prior Art.

Plaintiff's principal argument against the prior art hinges upon the proposition that a prior art patent or publication in and of itself must be a complete anticipation of one or more of the claims, or be disregarded. The Supreme Court has recently and repeatedly held to the contrary. Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005; Electric Cable Joint Co. v. Edison Co., 292 U.S. 69, 79, 54 S.Ct. 586, 78 L.Ed. 1131.

The prior art goes back at least to French patent No. 111,574 of 1876 to Penaud & Gauchot. Before the problem of human flight had been solved the design and details of retractable landing gear had been fully worked out. Everyone who proposed landing wheels provided for their withdrawal into the plane body or their folding up when in flight. The retraction of airplane landing gear is similar to the action of birds in drawing up their legs and feet when in flight. Although this French patent was long before the real problem of human flight had been solved by the Wrights in 1903, it discloses that "recesses in the surface of the nacelle [body] receive the different parts of these legs" of the retracting gears. So the earliest patent describes recesses in the body for receiving the frame members. After 1876 there was nothing inventive about the retraction of parts of landing gear unless it was the development of specific means such as defendants' hydraulic system.

The construction shown in the Martin patents was described in the prior art. A quadrilateral swinging frame, hinged transversely so as to swing fore and aft of the airplane, was old. Boultbee British patent 17,291 of 1909. Both single and double diagonal braces were well known and their functions fully understood from a very early date. Brierley British patent 17,433 of 1915. Encyclopedia Britannica, Volume IV, 9th Ed., p. 282. Scientific American, October 22, 1910, page 318. Doors, both swinging and sliding, had been used for closing the holes in which the wheels and other landing gear parts were housed. Francis U. S. No. 1,083,394. Lawrence French No. 474,585 of 1914. Both screws and worm gears for holding movable parts in any position had been well known for generations, and been specifically applied both to airplane landing gears and to other movable parts of airplanes. Ranfft British 9,981 of 1909. Keppel U. S. No. 1,026,677.

Hand-operated screws, cranks, levers, etc., for putting wheels or landing gear up and down were common. Ranfft British 9,981 of 1909. Blondin U. S. No. 989,520. Power operated means for doing the same thing were also common. McCarroll U. S. 1,-097,816. Peterson U. S. 1,218,456. Landing wheels with their associated parts had been drawn up into the airplane body. Hartly U. S. 1,068,652. Francis U. S. 1,083,394. Boultbee British 17,291 of 1909. Also into airplane wings. Rumpler German 256,610 of 1911. Also against and partly under the body and partly under the wings. McCarroll U. S. 1,097,816. Desvignes & Denhaut French 448,585. Donnet & Leveque French 2nd Addition 16,776 of 1912.

Certain of the prior art patents merit fuller consideration. McCarroll U. S. patent No. 1,097,816 was applied for in 1913. In it the wheels are lifted sidewise as in the Sikorsky machines, and go almost wholly into the body and almost wholly close the holes just under the wings. Such closure, to the extent that the space is occupied by the wheels and appurtenances, is a "closure" or "sealing" of the openings at least as great as in any of defendant's machines. Air resistance is thus reduced, as is expressly stated. By a drum and pawl the wheels may be cranked into any desired position by a hand crank, and are thereafter positively retained in such position. In addition to the hand crank, McCarroll also has power means for raising and lowering the wheels. He states that they may be actuated "either by the engine or manually". So Martin had nothing new in any of his patents as to either hand or power operation or the combination of both.

In Weber French patent 430,670 of 1911 the retractable wheels are maintained on a transversely arranged, rearwardly swinging, frame. The wheels thus swung up into the body of the airplane when not in use, much as in the Boeing machine. It is expressly stated that the wheels are drawn inside during flight, to decrease air resistance, and avoid "air turbulences",—the very object claimed by Martin. Thus plaintiff's frequent assertion that Martin was the first to recognize and remedy the difficulties due to turbulence is wholly in error.

Rumpler German patent 256,610 of 1911 describes an airplane with a retractable landing gear having wheels which may be swung upwardly and rearwardly upon a folding frame, and which go into holes in the wings of the airplanes.

There is nothing new or patentable in any of the Martin patents, either as to the individual parts or as to the asserted combinations or aggregations claimed by Martin.

### Conclusions of Law.

1. The first patent in suit is invalid because it is inoperative and devoid of utility.

2. Each of the patents in suit is invalid because it does not disclose invention.

3. Each of the patents in suit is invalid because it is anticipated.

4. Defendants' machines do not infringe any of the patents in suit.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The bill of complaint must be dismissed.

An order may be submitted.