**UNITED MATTRESS MACHINERY CO., Inc. v. HANDY BUTTON MACH. CO.**

Civ. A. 1322.

United States District Court, D. Delaware.

Jan. 5, 1953.

E. Ennalls Berl and David F. Anderson (of Berl Potter & Anderson), Wilmington, Del., and Cedric W. Porter and Nathan Heard (of Heard, Smith, Porter & Chittick), Boston, Mass., for plaintiff.

Thomas Cooch (of Connolly Cooch & Bove), Wilmington, Del., and Dugald S. McDougall, Chicago, Ill., for defendant.

RODNEY, District Judge.

This is an action to enjoin patent infringement on Mathewson patent No. 2,421,280, granted on May 27, 1947, for tufting buttons and assigned to the plaintiff, United Mattress Machinery Company, Inc. (hereinafter referred to as "United").

United is a corporation of the State of Maine with its principal place of business in Quincy, Massachusetts. The defendant, Handy Button Machine Company (hereinafter called Handy Button), is a corporation of the State of Delaware with its principal place of business in Chicago, Illinois.

For many years United and its predecessor corporation have been engaged in the manufacture of mattress making machines for various types of mattress cushions and the like. One of the articles produced by United is an automatic button tufting machine which inserts buttons and ties the tufting cords automatically in mattresses.

Briefly, the tufting of mattresses and cushions consists of passing a cord through the mattress from top to bottom in order to compress the felt or other stuffing material and to keep it from shifting after the mattress or cushion has been put into use. The tufting cord has been secured to the mattress cover or ticking in many ways. An early method for hand tufting was a flat leather tab affixed to both sides of the mattress over which the tufting cord was passed. The art developed into stages using cotton tufts, lacing and finally, in 1933, buttons. The latter date corresponded to the development of the first automatic button tufting machine.

Up until the middle of the 1940's, all the buttons used in the automatic machine were of a fiber-top construction with the eye or shank of the button either U-shaped or in the shape of a teardrop. The fiber-top but-

ton was subject to the difficulty of having the head chipped while it was being fed down the trough of the automatic machine. This chipping of the head caused the machine to jam and the loss of valuable time. This was one of the two faults of the old fiber top buttons which was expressed by a number of mattress manufacturers at trial. This difficulty was met by the use of a metal top to insure uniformity.[1]

The second objection to the old type of tufting buttons (known as Morley and Atlas tack buttons) [2] is that after the mattress has been in use for several months, the stuffing material tends to become compressed thereby slackening the tufting cord and thus allowing the eye of the button to come out of the tacking and lie on the top of the mattress. This situation has been known to cause great discomfort to the sleeper. It is alleged that the Mathewson patented tufting button has completely solved this difficulty.

The Mathewson patent consists of three claims, which need not be specifically set out for reasons which will subsequently appear.

Both parties admit the tufting button they are making is not identical to the Mathewson patent in that the heads are of a concave instead of a convex shape. The basic similarity between defendant's button and the Mathewson patent is the shape of the eye which is a use of the arrowhead principle.

Defendant admits it infringes the Mathewson patent if such patent is found to be valid.

In support of its contention of invalidity defendant relies on two prior art patents; W. H. Churchill No. 2,055,423, issued September 22, 1936, and B. C. Place, No. 1,992,-093, issued February 19, 1935.

In answer to the defense of invalidity, United set up certain indicia of invention, commercial success, imitation by the defendant, long felt want in the trade, and great expense in development.

The issuance of a patent is prima facie evidence of validity, and the one contesting the validity has the burden of overcoming the presumption. Radio Corporation of America v. Radio Engineer Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L. Ed 163; Container Co. v. Carpenter Container Corp., D.C.Del., 99 F.Supp. 167, 170; affirmed 3 Cir., 194 F.2d 1013. The presumption is, of course, stronger where the prior art is considered by the patent office. Container Co. v. Carpenter Container Corp., supra. In this case the Churchill patent was considered by the Examiner of Interferences in the patent office in a motion to dissolve an interference between Mathewson and one Williams. The Churchill patent was distinguished in that it did not claim the legs were affixed in the substance of the head. It is apparent from the file wrapper of the Mathewson patent that the shape or substance of the head is in no way the invention of the Mathewson patent.

Both the Place and Churchill patents embraced the arrowhead principle of the shank acting to prevent its removal when once inserted and this is the salient feature of the Mathewson patent in suit. The difference between the cited patents and the patent in suit lies in the fact that in the prior art patents the shank consisted of spring or snap fasteners for the purpose of affixing moldings or trim material to a somewhat rigid supporting member, while the shank of the Mathewson patent was of a more rigid character, being used on a more pliable substance and thus easier to insert. The flexible construction of the cited patents was necessary in order that the fasteners could be inserted in a rigid material or substance and, after insertion, the shoulders would spring back locking the fastener to the body. It is not apparent that the springing shank of the cited patents would not be usable for tufting mattresses or, indeed, might not be required if the tufting hold of the mattress cover should be heavily buttonholed or reinforced to prevent tearing. This, however, is a mere

---

1. The Mathewson patent in suit does not suggest or prefer a substance for the head of the button.

2. Neither the Morley or Atlas tack button was patented.

adaptation of the principle to the quality of the material engaged. Except for the head, the Mathewson patent can be read claim for claim on the drawings of the Churchill and Place patents. By Mathewson's own admission the shape of the head is not novel.[3] All the patentee did was to copy the abutting shoulder feature of the Place and Churchill patents and apply their teachings to the tufting button. It is elementary that "The application of an old patent to a new use is not patentable." Triangle Conduit & Cable Co. v. National Electric Products Corp., 3 Cir., 149 F.2d 87, 90. See also General Electric Co. v. Jewell Incandescent Lamp Co., 326 U.S. 242, 249, 66 S.Ct. 81, 90 L.Ed. 43.

The development of the Mathewson button does not reveal such a flash of creative genius as is required by Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58. It is rather mechanical skill in the calling to extend the known principles to new uses.

A word must be said of the other points raised by the plaintiff, namely, commercial success, copying by the defendant, and great expense in development.

■ It is quite true that the Mathewson button has received a great amount of commercial success as measured by sales. But the court is unable to ascribe the amount of success between the alleged invention and their uniformity in manufacture. The metal buttons which now embody the Mathewson description were the first tufting buttons to achieve a high degree of uniformity which makes for facility of operation in the plaintiff's button tufting machine. But even imputing a large portion of the sales to the alleged invention, commercial success will not save an obviously invalid patent. F. E. Myers & Brother Co. v. Goulds Pumps, Inc., D.C., 91 F.Supp. 475.

The condition of the mattress industry was such that either the defendant must imitate the plaintiff's button or suffer a drastic decrease in volume of sales. The plaintiff, as before noted, was the only manufacturer of automatic button tufting machines. Evidence discloses that when the machines were installed for various bedding manufacturers the buyers were asked which button they preferred, the fiber top or the new Mathewson button. According to their selection certain parts were added or changed in the button feeding trough. After the original modification, evidence discloses that a changeover would require fifteen to thirty minutes of actual working time, during which time the machine would be inoperative, and also the presence of one of the plaintiff's mechanics to do the job. Since a manufacturer in a highly competitive industry cannot afford a shutdown or having a representative of the plaintiff come a long distance, he would tend to continue using the same style of button for which the machine was adjusted. In most cases this was the Mathewson button. From this set of circumstances it is easy to see why the defendant was compelled to copy the plaintiff's button or go out of business.

■ Admittedly, the present defendant is infringing the patent of the plaintiff if that patent be valid. I am of the opinion, however, that the patent of the plaintiff was invalid in that it did not involve invention but merely the application of mechanical skill in adaptation of known and patented teachings to a new use.

In effect, just as the present plaintiff has utilized the former teaching of the Place and Churchill patents in the adaptation of the arrowhead principle of the shape of the shank to the tufting of mattresses instead of being applied to rigid members, so the present defendant has again utilized the same teachings by a copying of the plaintiff's copy.

3. "Applicant shows the ordinary form of the general flat heads of the tufting buttons, and there is no novelty, as is well known, in the shape of the head of the tufting button and the particular shape has nothing to do with the present invention." File wrapper of Mathewson Patent No. 2,421,280, page 22.