**CENTRAL MANUFACTURING CO.**
**et al., Plaintiffs,**

**v.**

**B–M–K CORPORATION, Defendant.**

**Civ. A. No. 1692.**

United States District Court
D. Delaware.

Dec. 16, 1957.

Judgment Affirmed July 3, 1958.
See 255 F.2d 927.

See also, 160 F.Supp. 318.

Thomas Cooch, Connolly, Cooch & Bove, Wilmington, Del., Robert I. Lipton, Bryant, Lipton, Strayhorn & Bryant, Durham, N. C., C. Earl Hovey Kansas City, Mo., for plaintiffs.

Clarence W. Taylor, Hastings, Lynch & Taylor, Wilmington, Del., Edward B.

Beale, Beale & Jones, Irving M. Tullar, and Eugene O. Retter, Washington, D. C., for defendant.

RODNEY, District Judge.

This is an action under the patent laws of the United States [1] in which the plaintiffs, some twenty-eight in number, are seeking a declaratory judgment of invalidity and non-infringement of U. S. Letters Patent No. 2,702,245.

Findings of fact and conclusions of law have been separately filed, but circumstances seem to warrant a separate discussion of the reasons prompting the conclusions therein reached.

The patent here involved was issued on February 15, 1955 to Edward J. Mayer, et al., and is and has been since its issuance owned as to the entire right, title and interest by B-M-K Corporation, the defendant. Mayer allegedly invented the process described in the patent on August 21, 1948 and the application for the patent was filed on January 27, 1949.

The defendant denied the material allegations of the complaint and counterclaimed for infringement. The defendant subsequently moved for dismissal of its counterclaim with respect to past infringement by certain of the plaintiffs. This motion, being resisted, has not been acted on since the question of infringement becomes material only after determination of validity.

Generally, the patent of defendant relates to a process of converting poultry feathers into a meal product containing food ingredients and used for plants such as fertilizer and for animals. The patent consisted of four claims, the first three of which relate to the method of processing the material and the fourth, being a product claim.

Claim No. 1 allegedly teaches the art of cooking feathers in the well known type rendering vessel by applying about 250° F. of heat to the vessel while maintaining the pressure of steam developed within the vessel from the moisture at about 30 lb. gauge pressure and agitating for 1½ hours, then releasing the pressure and continuing the application of heat and agitation until all but 6 to 14% of the moisture has been drawn off.

Claim No. 2 is somewhat similar to claim No. 1 but does not expressly state any numerical measure of the internal gauge pressure nor agitation.

Claim No. 3 is somewhat broader than the preceding claims in that it does not expressly state any agitation nor any numerical measure of the internal gauge pressure nor any numerical measure of the moisture content after drying. This claim was the subject matter of an interference proceeding (No. 85,769).

Claim No. 4 describes a product as produced and specifies that the product contains less than 14% of moisture and more than about 80% of protein.

Pursuant to pretrial proceedings, the following issues were framed for trial.

(1) Whether Patent No. 2,702,245, issued February 15, 1955, is invalid in whole or in part because of the knowledge or use of the alleged invention by others in this country or that it was patented or described in a printed publication in this or a foreign country before August 21, 1948.

(2) Whether Patent No. 2,702,245, issued February 15, 1955, is invalid in whole or in part because the differences between the subject matter of the patent and the prior art are such that the subject matter as a whole would have been obvious on August 21, 1948 to a person having ordinary skill in the art of rendering waste meat products.

(3) Whether Patent No. 2,702,245, issued February 15, 1955, is invalid in whole or in part because the patentee, Edward G. Mayer, was not the first, original and sole inventor of the alleged invention described in U. S. Patent No. 2,702,245.

(4) Whether Patent No. 2,702,245, issued February 15, 1955, is invalid in whole or in part because it does not com-

[1]. 35 U.S.C. § 1 et seq. 1952.

ply with the provisions of Section 112, Title 35 U.S.C.

(5) Whether Patent No. 2,702,245, issued February 15, 1955, has been infringed by any plaintiff on or subsequent to February 15, 1955.

Before considering the particular issues framed in the pretrial proceedings, it is well to give some consideration to certain principles relied upon by the defendant or otherwise of material bearing.

■ It is true, as contended by the defendant, that a patent granted by the appropriate authority is presumed to be valid and the burden of showing invalidity rests upon the party asserting it. This is not only set out in the Statute (35 U.S.C. § 282) but has been elaborated in many cases.[2]

■■ It is also true as the defendant contends that the prima facie validity of the patent may be strengthened by the fact that the patent, or some of its claims, have been the successful subject of interference proceedings in the Patent Office. As hereinbefore indicated, Claim No. 3 of the instant patent had been subject to interference proceedings. This principle, however, is subject to the fact that the interference proceeding must have involved the same antecedent patent presently cited against the instant patent.[3] This exception is material in this case since the present plaintiffs do not rely upon the patent cited in the interference proceedings in which the present patent was involved. Material also in the present connection is the principle that interference proceedings determine chiefly questions of priority and not validity as such.[4] It is the question of validity rather than priority that is here concerned. Of course, priority and validity often impinge but in this case, assuming the coverage in the same field, there is little question of priority.

■ The defendant also relies upon and stresses the fact that the patent of the defendant was of great utility and filled a public want and was accompanied with a large measure of commercial success. Of course, these matters are to be considered but the quality of invention necessary for the validity of a patent may not be supplied either by a showing of utility and filling a long felt want, or by its commercial success,[5] though the latter may operate as a "make weight" in a close case.

As previously stated, the patent now before the Court relates to a process for converting poultry feathers into a meal product containing food ingredients which could be used for animals or as a fertilizer for plants.

It is expressly agreed that the structure of the rendering vessel constitutes no part of the alleged invention.

The first issue, as herein set out, is based on 35 U.S.C. § 102. This section sets forth the conditions for patentability. If the alleged "invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention by the applicant" a patent will not be granted. If such a patent is granted, it is void.

To support their contention that the patent in question is invalid because of public knowledge, use and sale of the subject matter thereof long prior to the patentee, Mayer's, alleged date of conception, plaintiffs introduced evidence that Consolidated Chemical Industries, Inc., had been processing feathers since between 1935 and 1936. These were processed in Allbright-Nell Laabs Cookers in a semi-wet state. These cookers

2. United Mattress Machinery Co. v. Handy Button Machine Co., 3 Cir., 207 F.2d 1.

3. Royal Patent Corp. v. Monarch Tool & Mfg. Co., 6 Cir., 203 F.2d 299.

4. 2 Walker on Patents (Deller's Ed.) p. 889 et seq.; 40 Am.Jur. p. 580.

5. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235; United Mattress Machinery Co. v. Handy Button Machine Co., D.C.Del., 108 F.Supp. 899, 901, affirmed 3 Cir., 207 F.2d 1.

were pressure type cookers with a drive-shaft in the center with paddles attached thereto. The feathers were put on a steam jacketed heat to build up internal pressure and then dried and excess moisture removed. In this process nothing was used other than the feathers and moisture. The resulting product was a material that could be readily ground and made into a fertilizer or feed material. This material contained 73 to over 76 per cent protein.

Additional evidence was introduced by plaintiffs tending to show that Royal Tallow and Soap Company, Incorporated processed feathers since 1942—or before in substantially the same manner as that defined in the patent in question; the product so made was widely sold as fertilizer tankage.

Witnesses for both defendant and plaintiffs testified that the processing of feathers under pressure is old and was well known to the industry prior to Mayer's alleged invention.

In addition to the foregoing, evidence was introduced by plaintiffs that many other firms and individuals, i. e., Birmingham Hide & Tallow Company, Swift & Company, Kenneth V. Cope, Elwood J. Pliescott, The Carolina By-Products Co., Inc., Joplin Rendering Company, Wamesit Chemical Company, Georgia Rendering, Inc., Central Manufacturing Company processed feathers under pressure to obtain a product that could be used as fertilizer or feed.

Plaintiffs contend that even if the foregoing processes were not identical to that allegedly invented by Mayer, they and other processes and publications were such as to constitute anticipation which would render invalid the alleged patent in question. This contention is actually the second issue set out above and is based on 35 U.S.C. § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains * * *"

Thus the first two issues are reduced to the question of whether or not the prior-known processes shown by the evidence were exactly the same as the alleged invention of Mayer or, if not exactly the same, were they so similar as to show direct anticipation. These two issues are closely related and depend to a great extent upon the same evidence. For this reason, these two issues shall be considered together.

In addition to the evidence already discussed, plaintiffs introduced evidence of British Patent No. 1314 which was issued to one Alfred C. Smith in 1874. This patent disclosed that materials such as feathers or similar keratinous substances could be converted to an assimilated plant or animal food by heating the material under pressure in a high pressure kier in the presence of moisture only and with the aid of steam until the material is changed to a solution, whereupon the material is then dried for use. The patent stated that if wool was to be converted, 90 pounds internal pressure should be employed but that other pressures must be utilized for various other substances. The end product of the Smith process could be and apparently was used also as a glue or size. Unlike the product resulting from the Mayer process, the Smith product was readily soluble. Also, the Smith process—unlike the Mayer process—did not include agitation as a part of the process.

British patent No. 22,403 issued in 1905 to Gunther had to do with a process for converting feathers in the presence of moisture only by subjecting the same to the action of steam at high pressure in closed vessel for several hours. This patent did disclose the step of agitating the mixture. Gunther further stated that the degree of pressure and the tem-

perature should be varied depending upon the nature of material under treatment.

Plaintiffs contend that several publications also anticipated Mayer's alleged invention. Plaintiffs argue that the publication "The Nutritive Value of Corn Oil Meal and Feather Protein" by Draper is directly anticipatory of the claims of the Mayer patent. Draper wrote that he heated feathers in an autoclave under internal pressure. The feathers were then dried and the product fed to chicks.

"Maintenance and Operation of Rendering Equipment—Series F-A" by John J. Dupps Co., allegedly specifically teaches the steps and operating conditions, i. e., heating temperature, heating time, internal gauge pressure, etc., to be used in rendering material similar to feathers—which are the same steps and conditions as those of the claims of the Mayer patent.

"A Survey of Possible Methods of Utilization of By-Products of the Delaware Broiler Industry" by George L. Baker of the Delaware Agricultural Experiment Station, states that keratinous materials such as feathers may be utilized as feed for animals if properly physically reduced in size so as to be digestible.

Hammarsten in a textbook of Physiological Chemistry disclosed that heating keratin, in the presence of moisture only in a sealed tube, caused keratin to break down and dissolve. The temperature and pressure disclosed by Hammarsten is substantially the same as the limits set forth in the Mayer patent.

Other evidence introduced by the plaintiffs is not discussed herein since it is largely cumulative.

As herein indicated the Mayer process used machinery which, concededly, was well known in the field of the prior art. It employed elements long known in the art of rendering. While a combination of elements which are old is patentable if there is produced a new and useful result yet for this valid result there must be an exercise of inventive faculty. While the "flash of genius" concept may not be apt yet this Third Circuit has adopted the view that the alleged patentable process must involve and disclose " 'a step beyond the prior art requiring what is termed "inventive genius" ' ".[6]

█ The evidence in this case clearly established that even if the processes used by the parties herein cited were not identical to that allegedly invented by Mayer, they clearly are substantially the same and thus are an anticipation of the alleged invention. It is not necessary to decide whether or not the processes herein mentioned are identical.

Defendant contends that in order to negative novelty—in other words in order to show anticipation of invention—it is necessary that all the elements of the invention be found in one single description where it does substantially the same work in substantially the same way. It is not necessary to consider this since it has been established that each of several of the processes shown by the evidence do substantially the same work in substantially the same way as the patent in question.

Even though it is not necessary to consider this question, attention may be drawn to the case of Martin v. United Aircraft Corporation, D.C., 32 F.Supp. 367, at page 370, in which the Court in this District stated:

"Plaintiff's principal argument against the prior art hinges upon the proposition that a prior art patent or publication in and of itself must be a complete anticipation of one or more of the claims, or be disregarded. The Supreme Court has recently and repeatedly held to the contrary. Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55

6. R. M. Palmer Company v. Ludens, Inc., 3 Cir., 236 F.2d 496, 500.

S.Ct. 455, 79 L.Ed. 1005; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 54 S.Ct. 586, 78 L.Ed. 1131."

Some attention must be given to the fourth question presented in the pretrial proceedings, viz., that the patent did not comply with Sec. 112 of the Patent Law. Claims 1 and 2 of the patent both set out that the claimed invention was a method of producing a food ingredient for animals and plants high in proteins and "carbohydrates". Expert witnesses including those of the defendant agree that if feathers are processed according to the claimed patent the resulting meal will contain no carbohydrates. With this the defendant agrees but contends the error is obvious to a scientist. Patent laws, however, are not created for scientists alone. An invention must be capable of accurate definition and this accurate definition must be set out.[7] As stated by this Third Circuit:

> "The burden is on the inventor to say precisely what he has done. He must speak so clearly that he does not shift that burden to others who, because of his failure to be more specific may unwittingly invade the field covered by the patentee."[8]

Claim No. 1 is subject to another objection. The claim specifies that the feathers shall be heated to 250° Fahrenheit at 30 pounds gauge pressure. It is in evidence and not contradicted that these two measurements may not be obtained but that it is impossible to have both a 250° Fahrenheit and a 30 pound gauge pressure. Here then is an anomaly. The one claim of this patent that particularizes and specifies the temperature and gauge pressure and distinguish-es this process from the prior art specifies impossible particulars.

The patent of the defendant, by the first three claims, took an old and known process and by an adaptation of the degrees of heat and the length of heat application produced a product that has had a considerable measure of commercial success. As said by the Supreme Court in Lovell Manufacturing Co. v. Cary, 147 U.S. 623, 13 S.Ct. 472, 476, 37 L.Ed. 307,

> "It does not amount to invention to discover that an old process is better in its results, when applied to a new working, than would have been expected; the difference between its prior working and the new working being only one of degree, and not one of kind. * * * the public cannot be deprived of an old process because someone has discovered that it is capable of producing a better result."

As said in Smith v. Nichols, 21 Wall. 112, 119, 88 U.S. 112, 119, 22 L.Ed. 566,

> "A mere carrying forward or new or more extended application of the original thought, a change only ·in form, proportions, or degree, the substitution of equivalents, doing substantially the .same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee, in the other, to the public at large."[9]

---

7. General Electric Co. v. Wabash Appliance Corporation, 304 U.S. 364, 368, 58 S.Ct. 899, 82 L.Ed. 1402; United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 232, 63 S.Ct. 165, 87 L.Ed. 232.

8. Standard Oil Co. of Cal. v. Tide Water Associated Oil Co., 3 Cir., 154 F.2d 579, 582.

9. See also Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267; Belding Mfg. Co. v. Chal-lenge Corn Planter Co., 152 U.S. 100, 14 S.Ct. 492, 38 L.Ed. 370; Market Street Cable Railway Co. v. Rowley, 155 U.S. 621, 629, 15 S.Ct. 224, 39 L.Ed. 284; Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 292, 37 S.Ct. 502, 61 L.Ed. 1136; Higby v. A. B. T. Mfg. Co., 7 Cir., 93 F.2d 73, 74; Solar Corporation v. Borg-Warner Corporation, 1957, 7 Cir., 244 F.2d 940.

I am of the opinion that each of the first three claims of the patent is invalid as anticipated in the prior art. It is obvious that Claim No. 4 standing alone could not be supported.

I, therefore, am of the opinion that each of the claims of the patent is invalid and judgment must be rendered for the plaintiffs and an appropriate order may be submitted.